Cyril RUSSELL, etc., et al., Plaintiffs,

v.

Daniel A. PRICE et al., Defendants.

No. CV 75–1600–JWC.

United States District Court,
C. D. California.

Sept. 20, 1977.

---

1. *See Hertz v. Secretary of HEW,* 428 F.Supp. 56, 57 (E.D.Pa.1977).

Mitchell N. Reinis of Katz, Hoyt & Bell, Los Angeles, Cal., for plaintiffs.

Gerald M. Singer, Los Angeles, Cal., Stanley H. Handman, Burton C. Jacobson, Beverly Hills, Cal., for defendants.

## MEMORANDUM OPINION

CURTIS, District Judge.

This action for copyright infringement comes before this court on a motion for summary judgment based upon the following undisputed facts.

In 1913, George Bernard Shaw registered a copyright on his stage play, "Pygmalion", which copyright was renewed in 1941. It was originally due to expire in 1969, but it has been extended by an Act of Congress and is currently in effect. George Bernard Shaw died in 1950 and the current proprietors of the copyright are the legatees under his will, public trustees for the British Museum, the National Gallery of Ireland and the Royal Academy of Dramatic Art.

In 1938, the author licensed the production and distribution of a movie to be based on his play on terms which do not appear in the record. This movie was produced by Gabriel Pascal and starred Wendy Hiller and Leslie Howard. The film was copyrighted by Metro, Goldwyn, and Mayer and Loew's, Inc., but in 1966 this copyright was allowed to expire. When and if the license from George Bernard Shaw to M.G.M. expired is not disclosed. In any event, in 1971, the copyright proprietors of the play granted a license to Janus Films, Inc. to distribute the film. Janus had purchased prints of the film from the widow of the producer, Gabriel Pascal.

In 1972, it came to Janus's attention that a defendant in the instant action, Budget Films, Inc., was distributing copies of the film which it had obtained from some unknown source. In December, 1972, Janus commenced an action in the California state court, alleging unfair competition. This action was eventually terminated in Budget's favor, upon a finding that the action was in essence one for copyright infringement over which the state courts lacked jurisdiction. The English copyright proprietors thereupon executed a power of attorney in favor of Janus, and Janus brought an action for copyright infringement in this court against Budget Films, Inc. and the other named defendants.

The defendants' defense as alleged in their answer is that when the copyright on the film expired, the film fell into the public domain free of any claims, not only of the copyright proprietors of the film, but also the proprietors of the play as well.

The issue, therefore, is whether or not the owner of the copyright on an underlying work can assert his claim against the owner of a derivative product once the derivative product has fallen into the public domain.

It appears to be well established that if one intends to create and commercially exploit a work that is derivative of a copyrighted work, a license to do so must be obtained from the owner. This license is simply permission to use a part or all of the original work, which otherwise the copyright laws would prohibit. If the derivative work is copyrighted, the owner of the deriv-

ative work is entitled to protection only as to such new matter as may be attributable to the creator of the derivative work. If, then, the copyright on the derivative work should expire while the copyright on the underlying work is still in effect, the new matter falls into the public domain, while that which has been derived from the underlying work remains protected by the copyright on the underlying work. Consequently, even though the derivative work may have fallen into the public domain, to the extent that it partakes of the original work it cannot be used without the consent of the proprietor of the underlying copyright. *See Nimmer on Copyright*, Sec. 45.3, Notes 73–79; *Grove Press, Inc. v. Greenleaf Publishing Co.*, 247 F.Supp. 518 (E.D.N.Y. 1965).

Defendants' reliance upon *Rohauer v. Killiam Shows, Inc.*, 551 F.2d 484 (2nd Cir. 1977), is misplaced. In that case the author of "The Sons of the Sheik" sold and assigned the movie rights in her novel to a producer who in the following year produced the highly successful Rudolph Valentino film, "Son of Sheik". As a part of the assignment agreement, which was executed in 1925, the author agreed to renew her copyright on the book and thereupon to assign the movie rights to the producer for the renewal period. However, the author died in 1952 prior to the expiration of the first copyright on the book. It was, however, renewed by her daughter, her sole surviving child, who in turn assigned all of her right, title, and interest in the work to Rohauer, the plaintiff.

In 1966 Rohauer objected to the distribution of the film as being in derogation of its rights under the copyright law. In a lawsuit precipitated by the broadcast of the film in 1971 on WNET, the New York City Educational Television Station, Judge Friendly upheld the film owner's right to display the film over the objection of the proprietor of the underlying copyright.

But *Rohauer* is not in point. Judge Friendly, very carefully framed the issue by saying:

"The issue is this: When the author of a copyrighted story has assigned the motion picture rights and consented to the assignee's securing a copyright on motion picture versions, with the terms of the assignment demonstrating an intention that the rights of the purchaser shall extend through a renewal of the copyright on the story, does a purchaser which has made a film and obtained a derivative copyright and renewal copyright thereon infringe the copyright on the story if it authorizes the performance of the copyrighted film after the author has died and the copyright on the story has been renewed by a statutory successor under 17 U.S.C. § 24, who has made a new assignment of motion picture and television rights?" 551 F.2d 485–86.

The decision in *Rohauer* turned on the question of whether the author of a copyrighted work can agree as to terms for its use which may be enforceable against her heirs or successors after her death. Judge Friendly, relying upon the author's clear intent to grant movie rights for a period beyond the expiration of the original copyright and through the period of its renewal, held that such an agreement could be enforced against the heirs and successors of the original copyright holder.

The case before us presents no such problem and there is nothing in the *Rohauer* case, nor in any other case which has been brought to our attention, contrary to the solution which we have hereinabove set forth.

■ Defendants have asserted two additional defenses. They have questioned the standing of Janus Films, Inc. to prosecute this action. However, not only does Janus have a duly executed power of attorney to do so, it is well settled that an exclusive licensee such as Janus Films may sue for copyright infringement so long as it joins the copyright proprietors.

■ Lastly, defendants assert that this action should be barred by laches. However, the controversy is one of long standing and the plaintiffs have aggressively sought to protect their interests, first in the state court and now in this court. This is not an appropriate case for the application of the laches doctrine.

I conclude, therefore, that the plaintiffs are the rightful proprietors of a present and existing copyright upon the play, "Pygmalion", and that the showing of a film based upon the play without their consent constitutes an infringement of this copyright.

It appearing, therefore, that no genuine issue as to any material fact remains to be litigated and that the plaintiffs are entitled to a partial judgment on the issue of infringement as a matter of law, a partial judgment in favor of plaintiffs on this issue shall be granted.