**EDEN TOYS, INC., Plaintiff,**

v.

**FLORELEE UNDERGARMENT CO., INC., Defendant.**

**No. 80 Civ. 2242 (RLC).**

United States District Court, S. D. New York.

Nov. 25, 1981.

---

Stoll & Stoll, P. C., New York City, for plaintiff; Samuel J. Stoll, New York City, of counsel.

Lauritano & Schlacter, New York City, for defendant; Jed R. Schlacter, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

This is an action for copyright infringement, 17 U.S.C. §§ 501 *et seq.*, and violation of the Lanham Act, 15 U.S.C. § 1125.[1] The plaintiff, Eden Toys, Inc. ("Eden"), and the defendant, Florelee Undergarment Co., Inc. ("Florelee"), each have moved for summary judgment. Although the evidence strongly supports the claim of infringement, the copyright action must be dismissed because Eden is not the proprietor of the rights that the defendant apparently has infringed. The plaintiff is awarded summary judgment on the Lanham Act action, however, because Florelee has marketed merchandise with a false designation of origin.

The litigation concerns the use of a fictional character, Paddington Bear, who was created as the protagonist of a series of children's books by Michael Bond. Paddington Bear is a young Peruvian bear who stows away aboard a ship and eventually takes up residence in England. The principal copyrights covering these books and the characters illustrated and named therein are owned by Paddington and Company (Films) Limited ("Paddington").

In 1975 Paddington granted Eden, in the United States and Canada, an exclusive license to manufacture and sell and to license others to manufacture and sell products based upon the Bond book characters. Under the agreement, Eden retains the copyright and trademark rights derived from those products that Eden or its licensees create, design, or market. The agreement states also that Eden has the right to sue, in its name or in Paddington's name, for infringement of any of the copyright registrations it receives from the commercial development of the Paddington Bear characters. *See* Defendant's Appendix of

---

1. The parties dispute whether the 1976 revision of the copyright laws, Pub.L. 94–533, 90 Stat. 2584 (1976), applies to this action. This issue need not be decided, because even under the more liberal rules adopted in the amendments, the plaintiff would not have standing.

Exhibits to Its Cross-Motion for Summary Judgment, Exh. B (License Agreement between Paddington and Eden, Feb. 11, 1975) ("1975 Agreement").

Although the 1975 license was exclusive, it pertained only to a clearly delimited range of products. Among the Paddington Bear items that Eden could develop were stuffed animals, toys, games, and children's clothes, accessories, textiles and furniture. *See id.* at ¶ 1 and Schedules B, C. In disregard of these restrictions, Eden issued sublicenses for production of a variety of products not covered by its agreement with Paddington, including wrapping paper, draperies, Christmas ornaments, ceramic giftware, and textiles and needlecraft products for adult use. Apparently Paddington did not object to Eden's overstepping the bounds of their contract and renewed the license in 1979. In July, 1980, Paddington and Eden amended their agreement to expand the scope of the licensed products to include all merchandise except books, tapes and records. Eden asserts that the defendant infringed a derivative copyright that Eden obtained under authority of the 1975 agreement.

The copyrighted artwork, a silkscreen print emblazoned on gift wrapping paper, was created by Eden's licensee, the C.R. Gibson Co. ("Gibson") and contained several images of Paddington Bear repeated across the paper with the word "PADDINGTON" interspersed among them. The silkscreen was first published, with copyright notice, in January, 1978, and Eden applied for and received Copyright Registration No. VA 44–638 for the artwork in March, 1980. That registration is for a derivative copyright for artwork based on images of Paddington Bear found in the text and illustrations of the Michael Bond books. The registration leaves ambiguous the precise scope of Gibson's creative contribution to and, hence, of Eden's copyrightable interest in the artwork.

In November, 1979, the plaintiff discovered an adult women's shirt for sale that was manufactured by the defendant and imprinted with a picture of a bear identified by the name "Fred" and with the copyright notice "©️ Fred original." The picture of the bear is identical in almost all aspects to one of the bear images created by Gibson for the gift paper that is copyrighted under Registration No. VA 44–638. The plaintiff notified the defendant of the apparent infringement and instituted this suit after discovering on the market in February, 1980, a second shirt with the same imprint.

To bring an infringement action, a plaintiff must be the owner of a copyright, its assignee, or an exclusive licensee. *See, e. g., Bertolino v. Italian Line*, 414 F.Supp. 279, 284 (S.D.N.Y.1976) (Cooper, J.); 3 *Nimmer on Copyright* § 12.02 (1981). A non-exclusive licensee, however, does not have standing to commence an infringement action. *See, e. g.,* 3 *Nimmer on Copyright* § 12.02.

Eden's right to initiate this litigation depends, therefore, upon its showing that it is the owner or exclusive licensee of a valid copyright that allegedly the defendant has infringed. The certificate of registration ordinarily provides prima facie proof of validity and ownership of the copyright. *Novelty Textile Mills v. Joan Fabrics Inc.*, 558 F.2d 1090, 1092 (2d Cir. 1977); 17 U.S.C. § 410(c). This presumption of validity, however, may be rebutted by evidence demonstrating lack of originality or other defects in the copyright. *See Russ Berrie & Co., Inc. v. Jerry Elsner Co.*, 482 F.Supp. 980, 987–88 (S.D.N.Y.1980) (Haight, J.).

Eden contends that the image on the defendant's shirts is a direct copy of the artwork protected by Copyright Registration No. VA 44–638 and that as owner of that copyright, Eden has authority to sue for infringement. Even though Eden. has obtained a copyright registration for the Gibson paper, that registration does not establish plaintiff's standing. The validity of the copyright is tarnished by Eden's forays into markets for which it had not received a license from Paddington. Moreover, the copyright cannot protect the Paddington Bear image expropriated by the defendant because that image was copied by Gibson from a design created and copyrighted by

I.S. Wood/Paddington. Finally, Eden lacks standing to enforce Paddington's copyright against the defendant because Eden was not an exclusive licensee for Paddington Bear products sold in the markets in which the defendant sold its products.

Eden concedes that "[t]here is no question but that the underlying rights are owned by Paddington." Memorandum in Support of Plaintiff's Motion for Summary Judgment at 7. Eden has not sued, however, for infringement of the copyrights on the Bond book characters. Rather, its case rests on its alleged rights to the specific piece of art created by its licensee, Gibson, pursuant to a contract specifying that Eden would have title to all original artwork by Gibson.

■ The initial lacuna in Eden's argument occurs at the point of Eden's claim that it had authority to make this contract with Gibson. Eden's license from Paddington, the agreement underlying the Eden-Gibson contract, grants to Eden "[l]egal title in and to all copyrights and trademarks derived from the creation, design and marketing of Licensed Products by Eden and its licensees[.]" 1975 Agreement ¶ 7. The gift wrapping paper that Eden licensed Gibson to develop is not a "Licensed Product" as that term is used in the 1975 Agreement. The paper is produced in "packaged individual sheets only for sale to retail consumers" in the adult market. Memorandum in Support of Plaintiff's Motion for Summary Judgment at 16. Eden's authority under the 1975 license, by contrast, is expressly limited to the creation of toys, clothes, accessories and other similar items for the juvenile market.

Eden acknowledges that it overreached its express licensing authority in several transactions concerning its sublicensing of Paddington Bear novelties. Richard Miller, Eden's president, admitted that "licenses had been granted by Eden that were not precisely within the schedule of items to be granted." Deposition of Richard Miller 69. The plaintiff contends, however, that Paddington ratified these extra-contractual actions informally during the life of the 1975 agreement and formally in the 1980 amendment.

Eden's argument that it had *de facto* authority to disregard the plain terms of its contract with Paddington is unpersuasive. As the 1980 amendment makes clear, Eden could have sought to revise the license any time that it desired to expand the scope of its Paddington Bear marketing activities. That no such expansion was memorialized until 1980 undercuts rather than supports Eden's contention that it had the right to operate in the adult gift and novelty market despite the narrow scope of the 1975 agreement. Eden's contract with Gibson apparently violated the 1975 authorization and placed Eden in the position of an infringer. Even if Paddington has chosen to ignore this transgression, serious doubt remains concerning the validity of a copyright based upon such infringement.

■■ The court need not determine the status of Copyright No. VA 44–638, however, because even if Eden had authority to produce and copyright the gift paper, the copyright could not encompass the Paddington Bear image that the defendant applied to its shirts. For a copyright on a piece of work to be valid, the work must contain "some substantial, not merely trivial originality...." *Chamberlin v. Uris Sales Corp.*, 150 F.2d 512, 513 (2d Cir. 1945). When the work derives from a previously copyrighted design, the new copyright is limited to the original contribution to the existing design. *See, e. g., L. Batlin & Sons, Inc. v. Snyder*, 536 F.2d 486, 489–91 (2d Cir. 1976); *Russell v. Price*, 448 F.Supp. 303, 305 (C.D.Cal.1977); 1 *Nimmer on Copyright*, § 3.03 (1981). The silkscreen artwork that Eden registered under Copyright No. VA 44–638 is based upon the Bond book Paddington Bear characters. At most, therefore, Eden's copyright could protect only Eden's or Gibson's novel additions to the prior works. The images on the gift paper, however, are strikingly similar in aesthetic appeal to published and copyrighted Paddington Bears. *See* Defendant's Appendix of Exhibits to Its Cross-Motion for Summary Judgment, Exh. G (reproductions

of Paddington Bear drawings copyrighted by I.S. Wood/Paddington).

Gibson apparently focused its creative efforts on the layout of the bears and the display of the word "PADDINGTON" on the paper. The individual Paddington Bear images on, the other hand, were changed only trivially from the copyrighted designs that Eden supplied to Gibson.[2] The scrutinizing eye can, of course, detect a few differences. The Gibson version has smoother lines and shows no fingers or toes. These changes, however, would not convey to the ordinary observer aesthetic appeal different from that experienced from prior expressions of Paddington Bear. *See Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir. 1960). Gibson expressed Paddington Bear essentially unchanged from his prior manifestations. The image on the gift paper has the same rain hat, overcoat, and valise and the same bewildered look as previously published images of Paddington Bear. Eden could claim no copyrightable interest in that image standing alone. To the extent that the defendant did copy a portrait of Paddington Bear, that portrait was conceived prior to Gibson's designs and expressed in publications copyrighted by Paddington.

Nor can Eden claim a cause of action based on its position as exclusive licensee for the underlying Paddington Bear image developed by Wood and others. If Florelee had copied the bear onto children's clothing or other articles that Eden was licensed to produce, then Eden would be a proper party to this lawsuit.[3] The allegedly infringing garments, however, are of adult sizes sold in adult markets.[4] Eden had no license to compete in that arena and can claim no legitimate losses due to Florelee's improper sales. Even accepting *arguendo* that Paddington ratified Eden's unilateral expansion of the 1975 agreement, this would not propel Eden into the status of *exclusive* licensee that is necessary to give Eden standing to sue for infringement.

Eden asserts also that the 1975 agreement permits it to sue for infringement if Paddington takes no legal action to protect Eden or its licensees from competition from infringers. *See* 1975 Agreement ¶ 9. While not passing on the validity of that provision, it must be noted that Eden's rights under this paragraph are limited to protection from infringement of rights licensed under the 1975 agreement. As has been stated, that agreement expressly limits Eden's interests to the sale of goods in children's markets only. Eden's theory that the 1980 amendment conveyed the right to sue for infringements of licensing rights that Eden usurped for itself between 1975 and 1979 is meritless. Although courts have allowed the contractual transfer of accrued causes of action to accompany the assignment of a copyright, the 1980 amendment provides no indication that Paddington intended such a transfer. *See Prather*

---

**2.** One of the bears on the gift paper does appear to be an original Gibson design. Eden has not accused Florelee of copying that design and the originality of that image does not entitle Eden to copyright the other bears that are clear copies of prior Paddington publications.

**3.** The question of whether under these circumstances Eden could bring the action alone or would be required to join Paddington would depend upon whether the 1976 revision of the copyright law applied to this action. *See* 3 *Nimmer on Copyright* § 12.02 (1981). Although exclusive licensees could sue for infringement under the Copyright Act of 1909, as amended in 1947, 61 Stat. 652 (1947), the owner of the copyright had to be joined as an indispensible party. *See, e. g., First Financial Marketing Services Group, Inc. v. Field Promotions,* 286 F.Supp. 295, 298–99 (S.D.N.Y.1968)

(Pollack, J.); 3 *Nimmer on Copyright* § 12.02 (1981).

**4.** Although labeled a different size, the smallest articles of clothing manufactured for the adult market are actually the same size as the largest articles prepared for the children's market. Eden contends this overlap renders the defendant an infringer of Eden's exclusive license to vend in the children's market. Even if Florelee's customers purchased clothing to give to children, these sales would not infringe Eden's license. Regardless of their purpose, these customers were seeking adult sized clothes in adult stores and Eden had no right to sell to them under those circumstances. Eden's theory would prohibit entirely Paddington from licensing another manufacturer, such as Florelee, to sell adult clothing in small sizes.

*v. Neva Paperbacks,* 410 F.2d 698 (5th Cir. 1969). An assignment of a copyright, even if it conveys "all right title and interest," will not be construed to assign existing causes of action unless expressly included.[5] 3 *Nimmer on Copyright* § 12.02.

To the extent that Florelee's sales eroded Eden's profits, the 1975 agreement provides Eden with the means to seek a remedy for its losses directly from Paddington, through a reduction in royalty payments. Instead of pursuing this contractual remedy and thereby forcing Paddington, the true party in interest, to come forward and assert the claims it desires to make, Eden is asking the court to rewrite the agreements that Paddington and Eden executed. Eden cannot evade the requirement that the copyright proprietor or its exclusive licensee appear in court to press its own claims. Only by having present the owner of the interest asserted can the court be certain that the party seeking damages is the party who was injured and that the defendant will not face multiple suits. The court cannot rewrite Eden's agreements with Paddington to place Eden in the position of exclusive licensee for 1975 to 1979.

■ Because at the time of the alleged infringement, Eden was not the exclusive licensee of the rights that the defendant apparently infringed, the cause of action for copyright infringement must be dismissed.[6]

■ The plaintiff also moves for summary judgment on its claim that Florelee violated § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by affixing the copyright notice "©Fred original" to Florelee's shirts. The Lanham Act confers standing on "any person who believes that he is or is likely to be damaged" by another's use of a "false designation of origin" on merchandise entering into commerce. 15 U.S.C.

§ 1125(a). The Act thus contemplates "a broad class of suitors," *L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.,* 214 F.2d 649, 651 (3d Cir. 1954), in contrast to the strict standing requirements applied to copyright actions. To seek injunctive relief under § 43(a), a plaintiff need not be a direct competitor of the defendant. *Rare Earth, Inc. v. Hoorelbeke,* 401 F.Supp. 26, 39 (S.D. N.Y.1975) (Cannella, J.); *National Lampoon, Inc. v. American Broadcasting Co., Inc.,* 376 F.Supp. 733, 746 (S.D.N.Y.) (Brieant, J.), *aff'd,* 497 F.2d 1343 (2d Cir. 1974) (per curiam); 1 *R. Callmann, Unfair Competition, Trademarks, and Monopolies* § 18.2(b) (3d ed. 1967). The crucial question is whether the prospective plaintiff has a reasonable interest that requires protection from the defendant's false representations. *See Rare Earth, Inc. v. Hoorelbeke, supra,* 401 F.Supp. at 39.

■ Eden clearly satisfies these requirements. Even though it does not compete in the same markets as the defendant, some of the same consumers certainly participate in both markets. Persons viewing the copyright notice and claim of originality on the Florelee Fred shirts are likely to be confused as to the origin of the bear image on those shirts and the similar Paddington Bear image found on Eden's products. Eden has an interest, worthy of being protected, in maintaining clear consumer understanding of the Paddington Bear image and its association with Eden's toys, games and other children's products.

There is no doubt about the falsity of Florelee's copyright notice. The defendant claims, through its copyright notice, that the design on its shirts is an original, copyrighted creation of an entity named "Fred." The image, however, is neither original nor

---

5. Because the defendant apparently ceased distribution of the offending shirts before Paddington and Eden amended the license in 1980, Eden would not have a cause of action based on that amended agreement. Ownership of copyright rights for standing purposes is determined at the time of the infringement. *See* 3 *Nimmer on Copyright* § 12.02 (1981).

6. Although the defendant has styled its motion as one for summary judgment, the defendant requested judgment in the form of a dismissal. Therefore the motion will be treated as one for dismissal or, in the alternative, summary judgment.

copyrightable.[7] This deception can mislead consumers into believing that the clothing they purchased is a unique novelty instead of a common copy. Moreover, aficionados of Paddington Bear can easily mistake the defendant's shirts for those of the plaintiff. The similarities of the bears appearing on the garments may induce persons to think that "Fred" is a new character from the Paddington Bear series and to purchase the defendant's merchandise to complement their other Paddington Bear possessions.

■■■■ The Lanham Act protects consumers from the purveyors of such misinformation. To qualify for injunctive relief, a plaintiff need not establish actual deception as long as the misleading description of designation has a tendency to deceive or is likely to cause confusion. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 467 F.Supp. 366, 374 (S.D.N.Y.) (Griesa, J.), *aff'd*, 604 F.2d 200 (2d Cir. 1979). The plaintiff having satisfied this burden, Florelee will be enjoined from any further use of the "Fred original" copyright notice in conjunction with the purloined Paddington Bear image.[8]

In addition to injunctive relief, Eden seeks damages from Florelee under the Lanham Act. Although the court doubts that Eden can prove that it suffered any actual damage from the defendant's actions, Eden may pursue the matter through a magistrate. The plaintiff should remember, however, that it is not entitled to the entire amount of Florelee's sales. Rather, the defendant is liable to Eden for only those sales, if any, that the defendant diverted from Eden's market.

IT IS SO ORDERED.

7. Eden contends further that "Fred" of "Fred original" is a fictitious entity. Florelee contests this allegation in its Rule 3(g) statement. Because the copyright notice is misleading regardless of the existence of "Fred," summary judgment can be awarded despite this controversy.

8. Even though the defendant alleges to have terminated its distribution of the offending clothing, nothing at present prevents a repetition of its deception. "Mere voluntary cessa-

tion of allegedly illegal conduct does not moot a case...." *United States v. Concentrated Phosphate Export Association*, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968). The court is satisfied that there is some cognizable danger of recurrent violation and therefore finds that the Lanham Act action is not moot. *See United States v. W.T. Grant Company*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).