**JULIE RESEARCH LABORATORIES, INC., Plaintiff–Counter–Defendant, Appellant–Cross–Appellee,**

v.

**SELECT PHOTOGRAPHIC ENGINEER-ING, INC., Philip Boettger, Sandra Bo-ettger, Neil Darish, Jim Linford, Defen-dants–Appellees,**

**PLI Photo Lab, Incorporated, Defendant–Counter–Claimant, Appellee–Cross–Appellant.**

**Nos. 1573, 1706, Dockets 92–9367, 93–7025.**

United States Court of Appeals,
Second Circuit.

Argued June 2, 1993.

Decided June 29, 1993.

Martin J. Arbus, Oakhurst, NJ, for appellant.

Sandra Boettger, appellee pro se.

Neil Darish, appellee pro se.

Philip Boettger, appellee pro se.

Stephen F. Harmon, New York City (Parker Chapin Flattau & Klimpl, New York City, of counsel), for appellee PLI Photo Lab, Inc.

Paul J. Mirowski, San Diego, CA, for appellee Jim Linford.

Before: MESKILL, Chief Judge, McLAUGHLIN, Circuit Judge, and COVELLO,* District Judge.

PER CURIAM:

This is an appeal and cross-appeal from a judgment of the United States District Court for the Southern District of New York, Carter, J., dismissing appellant-cross-appellee Julie Research Laboratories, Inc.'s (JRL) claims of misappropriation of trade secrets, unfair competition and unjust enrichment against appellees Select Photographic Engineering, Inc., Philip and Sandra Boettger, Neil Darish and Jim Linford (collectively "Select"), and awarding JRL $37,910 with interest against appellee-cross-appellant PLI Photo Lab, Inc. (PLI) for a balance due to JRL for equipment sold to PLI.

We affirm in part, vacate in part, and remand for recalculation of damages against PLI and for further findings.

On January 27, 1992, JRL instituted this action seeking an injunction and damages against Select and payment of a balance due from PLI. JRL sought to have Select enjoined from marketing or selling an electronic photographic retouching imaging system known as "The Edge," claiming that it utilized technology substantially similar to that of the "JRL Diamond," thus infringing proprietary trade secrets of JRL. JRL also sought to enjoin Select, which had previously been a sales agent for JRL, from soliciting any of the sales leads that Select had generated in promoting the JRL Diamond. After issuing an order to show cause, the district court held a hearing on February 4 and 5, 1992, and, on February 29, 1992, issued a temporary restraining order against Select.

The full bench trial before Judge Carter began on June 30, 1992 and ended on July 9, 1992. In an opinion dated November 24, 1992, the district court dismissed JRL's claims against Select and found in JRL's favor against PLI for $37,910 plus interest. *Julie Research Lab. v. Select Photographic Eng'g*, 810 F.Supp. 513 (S.D.N.Y.1992). With respect to the trade secrets claim, the district court held that "[p]laintiff has failed to surmount his threshold burden of establishing that there is in fact a trade secret, or in defining what the trade secret is for which protection is sought." *Id.* at 520. The court found that there was nothing unique or secret in the combination of twelve system design choices that JRL claims constitutes proprietary information. *Id.* The court also held that "[e]ven assuming that plaintiff does possess a trade secret and has defined it with sufficient specificity, plaintiff still cannot prevail because of the deficiency of its efforts to maintain secrecy." *Id.*

The district court next addressed the dispute over PLI's right to return to JRL a JRL Diamond system it had purchased and the dispute over various credits for missing or returned components of that system. The court found that PLI had "no right now to return the Diamond," gave PLI credit for four named items missing or returned, calculated the balance due to JRL and subtracted Select's commission, arriving at an amount due to JRL of $37,910 plus interest. *Id.* at 521. The court next held in favor of PLI on its counterclaim against JRL for return of a benchmark created by PLI to test the capabilities of imaging systems such as the JRL Diamond. *Id.* Finally, the court rejected JRL's unjust enrichment claim against Jim Linford for Linford's training on, and use of, a JRL Diamond system owned by JRL. *Id.* The opinion of the district court does not mention JRL's claim that, in attempting to sell "The Edge," Select improperly pursued sales leads that had been developed by Select while Select was acting as JRL's sales agent.

■ The record on appeal supports the district court's holding that at the commence-

---

* Honorable Alfred V. Covello, United States District Judge for the District of Connecticut, sitting

by designation.

ment of this litigation, PLI had no right to return its JRL Diamond workstation. It appears that the district court erred, however, in its calculation of damages against PLI. At issue is the district court's treatment of the Firelight and the JRL Fileserver, two equipment packages shipped to PLI, each containing hardware and software and each capable of interfacing the Fire 1000 camera with the JRL Diamond workstation. The October 30, 1991 invoice in evidence makes clear that the JRL Fileserver, complete with SHIRA software, was the interface intended to be shipped as part of the JRL Diamond system. The parties agree that the JRL Fileserver shipped failed to include working SHIRA software. The parties also agree that PLI received the Firelight, complete with working SHIRA software, in addition to the invoiced items and that the Firelight has been retained by PLI and functions as PLI's Fire 1000 interface (PLI has also kept the hardware associated with the JRL Fileserver and uses it for other purposes). Finally, the parties agree that PLI made a payment of $27,000, as payment for the Firelight, directly to Cymbolic Sciences International (CSI), the manufacturer of the Fire 1000 and the Firelight.

Therefore, PLI eventually received a complete retouching imaging system, including a functioning Fire 1000 interface with SHIRA software. The problem with the district court's calculation is that in addition to giving PLI credit toward the invoice price for the $27,000 it paid to CSI to make its JRL Diamond system complete (*i.e.*, obtaining the Firelight including SHIRA software), the court also gave PLI a $13,000 credit because the JRL Fileserver did not include functioning SHIRA software. *Julie Research*, 810 F.Supp. at 521. Clearly, if full credit were given to PLI for money it spent to make the system complete, then it would be "double counting" also to give PLI credit for the value of the missing items that were replaced. Therefore, we vacate the district court's determination of damages owed by PLI to JRL and remand for recalculation of damages noting the above error. From the record it appears that in addition to possessing a complete and functioning JRL Diamond system, PLI retains possession of the hard-

ware associated with the JRL Fileserver. We leave it to the district court to decide on the appropriate disposition of and accounting for that item.

As to JRL's claims against Select, we find no error in the district court's holding that JRL has failed to establish that the combination of system design choices made by JRL in developing the JRL Diamond constitutes a trade secret. The record supports the district court's factual findings that the twelve design choices at issue were either obvious, widely known, easy for others to discover legitimately or disclosed in the sales literature of JRL or other manufacturers. We affirm the district court's dismissal of this and each of the other claims against Select, with one exception. The district court made no findings whatsoever as to JRL's claim that Select had improperly pursued sales leads developed for the JRL Diamond. Both parties argue on the facts that their position on appeal as to the sales leads is the correct one. As an appellate court, however, we cannot make findings of fact. Without guidance from the district court, we are in no position to review the district court's rejection of this claim. *See* Fed. R.Civ.P. 52. Therefore, on remand the district court should make findings and then rule on JRL's claim against Select for improper use of the JRL Diamond sales leads.

For the reasons stated above, we vacate the district court's award to JRL of damages and remand to the district court to recalculate the proper amount of damages. On remand, the district court also should state explicitly its findings and holding as to JRL's claim against Select for improper use of the JRL Diamond sales leads. In all other respects, the judgment of the district court is affirmed.