**ALTHIN CD MEDICAL, INC., Plaintiff,**

**v.**

**WEST SUBURBAN KIDNEY CENTER, S.C., d/b/a WSKC Dialysis Services and Sherman Levine, M.D., Defendants.**

No. 94 C 2577.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 23, 1994.

Opinion Amending Decision
Jan. 26, 1995.

Michelle C. Burke, David B. Bayless, Kevin T. Conroy, McDermott, Will & Emery, Chicago, IL, for plaintiff.

Michael E. Barry, Richard William Young, John P. Feldman, Gardner, Carton & Douglas, Chicago, IL, for West Suburban Kidney Center.

Mark A. Brand, Dan J. Hofmeister, Jr., Brand & Novak, Ltd., Chicago, IL, for Dr. Levine.

## *MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

Plaintiff, Althin CD Medical, Inc., filed a two count amended complaint against defendants West Suburban Kidney Center, S.C. and Sherman Levine, M.D. Count I alleges a federal cause of action for copyright infringement. Count II alleges that the defendants misappropriated trade secrets in violation of the Illinois Trade Secrets Act. Now before the court are defendants' motions to dismiss the plaintiff's first amended complaint for lack of standing.

## I. *BACKGROUND*

From 1987 through 1989, Sherman Levine, M.D. ("Dr. Levine") was a professor at the Albert Einstein College of Medicine ("Albert Einstein"). During that time, Dr. Levine authored and created computer software useful in analyzing and billing for kidney dialysis services. The software is called "Hyperchart."

On November 9, 1989, Dr. Levine executed an assignment of his rights in the Hyperchart software to Albert Einstein. Albert Einstein thereafter obtained a Certificate of Registration for Hyperchart in accordance with the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*

On February 1, 1990, Albert Einstein entered into an agreement with Archon Data Systems, Inc. ("Archon"). Albert Einstein granted Archon an "exclusive" worldwide license to manufacture and sell the software, as well as sub-license it to others. In Part 5 of the agreement, the parties outlined each party's rights with respect to the copyright and future infringement actions. The text of this part of the agreement is as follows:

5. *Copyrighted Work Protection and Other*

   5.1  Licensor, at its sole cost and expense, has applied for and will use its best efforts to obtain United States copyright registrations for the Licensed Work.

   5.2  Licensee agrees to assist Licensor at Licensor's sole cost and expense, to the extent such assistance is reasonably necessary, in the procurement of any protection or to protect any of Licensor's rights in and to the Licensed Work. Licensor, if it so desires, may procure protection for the Licensed Work and may prosecute any claims or suits to protect the Licensed Work in Licensor's own name, and may join Licensee as a party thereto, if necessary.

   5.3  Licensee shall promptly notify Licensor in writing of any uses which may come to Licensee's attention which may constitute infringements by others of the Licensed Work or

Licensed Products. Licensor shall have the sole right to determine whether or not any action shall be taken on or against any such infringements and Licensee shall not institute any suit or take any action on account of such infringements without first obtaining Licensor's written consent. Upon receipt of such consent, Licensee shall have the right, in its sole discretion and at its expense, to initiate such legal proceedings. Any settlement or recovery received from any such proceeding and remaining after reimbursement of Licensee for all of its reasonable expenses incurred in connection with such proceeding shall be divided sixty-five percent (65%) to Licensee and thirty-five (35%) to Licensor.

On June 9, 1992, Archon executed a distributor contract with Althin CD Medical, Inc. ("Althin"). In the agreement, Archon granted Althin "an exclusive, worldwide right and license to develop, manufacture, market, sell, develop and enhance the [Hyperchart software]." The parties agreed in the contract that "[Albert Einstein], including Dr. Levine, shall retain the right to make and use [the Hyperchart software] for scientific purposes and for continued research." In addition, Section 13 of the agreement set out the parties' rights with respect to trademark and copyright infringement. The third paragraph of that section states:

Althin shall give Archon prompt written notice of any infringement by others of copyrights or trademarks licensed hereunder which comes to the attention of Althin. If commercially reasonable, Althin shall, at its expense, take appropriate action against copyrights and trademarks infringers. Archon may act to defend Althin's rights hereunder where it deems such action to be reasonably necessary or appropriate, and Althin agrees to aid in enforcement of Archon's trademark rights or copyrights, including but not limited to authority to sue in Althin's name, with Althin's prior written consent, as reasonably required, at the expense of Althin.

In its complaint, Althin alleges that West Suburban Kidney Center ("WSKC") and Dr. Levine infringed its rights in the Hyperchart software. The following allegations make up Althin's complaint. On or about July 1, 1991, Albert Einstein granted Montifiore Medical College ("MMC") the right to use Hyperchart for a maximum period of one year, subject to certain conditions. Because WSKC either managed the dialysis center at MMC or was affiliated or otherwise associated with the persons that did so, WSKC had access to the Hyperchart software. Thereupon, WSKC retained Dr. Levine to modify Hyperchart for use in the dialysis clinics operated by WSKC located in Illinois and elsewhere. WSKC presently utilizes the software system created by Dr. Levine in one or more of its dialysis centers. As a result, plaintiff alleges two claims against both WSKC and Dr. Levine. In Count I, plaintiff frames its claim as one for copyright infringement. In Count II, plaintiff alleges that the defendants misappropriated trade secret information encompassed within Hyperchart.

Defendants WSKC and Dr. Levine have filed motions to dismiss the plaintiff's first amended complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that Althin lacks standing to assert the claims for infringement. The court now considers the motion.

## II. STANDARD OF REVIEW

The defendants move to dismiss this case for both lack of subject matter jurisdiction (FED.R.CIV.P. 12(b)(1)) and failure to state a claim upon which relief can be granted (FED.R.CIV.P. 12(b)(6)). The court is faced with the question of which standard of review to apply. When a party raises subject matter jurisdiction as one of many grounds for dismissal, the court shall consider the Rule 12(b)(1) challenge first, as dismissal under this rule makes all other challenges moot. *Freiburger v. Emery Air Charter, Inc.*, 795 F.Supp. 253, 256 (N.D.Ill. 1992); *Reason v. Heslin*, 723 F.Supp. 1309, 1311 (S.D.Ind.1989); 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

PROCEDURE: Civil 2d § 1350, pp. 209–10 (1990).

■ When deciding a motion to dismiss based upon FED.R.CIV.P. 12(b)(1), the court construes the complaint liberally and is not bound to accept as true allegations of jurisdiction where a party properly raises factual questions of subject matter jurisdiction. *Reason,* 723 F.Supp. at 1311. Furthermore, the court may look beyond the jurisdictional allegations to examine any evidence submitted to determine if subject matter jurisdiction in fact exists. *Roman v. U.S. Postal Service,* 821 F.2d 382, 385 (7th Cir.1987) (*citing Grafon Corp. v. Hausermann,* 602 F.2d 781, 782 (7th Cir.1979)); *Sprague v. King,* 825 F.Supp. 1324 (N.D.Ill.1993), *aff'd,* 23 F.3d 185 (7th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 356, — L.Ed.2d — (1994). With that, the court considers the defendants' motions.

### III. *ANALYSIS*

Article III of the Constitution confines the federal courts to adjudicating actual "cases" and "controversies." *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The Article III doctrine that requires a litigant to have "standing" to invoke the power of a federal court is perhaps the most important of these doctrines. *Id.* The issue of standing addresses the question "whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

■ Standing cannot be "inferred argumentatively from averments in the pleadings." *Grace v. American Cent. Ins. Co.,* 109 U.S. 278, 284, 3 S.Ct. 207, 210, 27 L.Ed. 932 (1883). Rather, it "must affirmatively appear in the record." *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 608, 107 L.Ed.2d 603 (1990). Also the burden falls on the complainant to allege enough facts to demonstrate that he is the party with

standing in the case. *Warth,* 422 U.S. at 518, 95 S.Ct. at 2215.

Thus, the issue for the court is whether Althin's standing to sue for infringement "affirmatively appears in the record." *See FW/PBS,* 493 U.S. at 231, 110 S.Ct. at 608. Althin does not allege that it is the owner of the software in question. Rather, Althin alleges that its standing to sue for infringement arises from some other source. *See Pfizer Inc. v. Elan Pharmaceutical Research Corp.,* 812 F.Supp. 1352 (D.Del.1993). Althin argues that, as a result of two contracts, it is the holder of a sub-license for the exclusive worldwide rights to the Hyperchart software. These two contracts are central to this case. First, Althin alleges that in February, 1990, Albert Einstein and Archon entered into a license agreement (the "Einstein/Archon Agreement") in which Albert Einstein granted Archon an exclusive worldwide license to make, use, lease, and sell Hyperchart. Second, Althin alleges that, later, in an agreement (the "Archon/Althin Agreement") in June, 1992, Archon granted Althin a sub-license for the exclusive worldwide right to develop, market, sell, enhance, demonstrate, distribute, and sub-license Hyperchart. It is from these two contracts from which Althin must find its standing to raise the two infringement claims. The defendants, WSKC and Dr. Levine, initially argue that, because Althin has not followed the express terms of the Einstein/Archon Agreement, Althin is without authority to bring an action to enforce or protect its rights in the software. Second, the defendants argue that Althin lacks standing to sue as a matter of copyright law because it is not an exclusive licensee of the Hyperchart software. With that, the court addresses each of the arguments made by the defendants in turn.

### A. *Althin's Standing to Sue Under the Einstein/Archon Agreement*

■ Defendants initially argue that Althin is not the appropriate party to enforce any of the proprietary rights arising from the Hyperchart software because Althin has not followed the express terms of the Einstein/Archon Agreement. The determination of whether Section 5 of the Agreement

grants Althin the right to sue WSKC and Dr. Levine requires the court to interpret the terms of the contract. The proper interpretation of an unambiguous contract is a question of law for the court. *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir.1989); *LaSalle Nat. Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir.1987). In *Hunt Ltd.*, the Second Circuit set out the standards for interpreting contracts under New York law. The court stated:

> [c]ontract language is not ambiguous if it has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Breed v. Insurance Co. of N. Am.*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280, 1282 (1978). Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation. The court is not required to find the language ambiguous where the interpretation urged by one party would "strain[ ] the contract language beyond its reasonable and ordinary meaning." *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 459, 161 N.Y.S.2d 90, 93, 141 N.E.2d 590, 593 (1957). If the terms of a contract are unambiguous, the obligations it imposes are to be determined without reference to extrinsic evidence, *see Teitelbaum Holdings, Ltd. v. Gold*, 48 N.Y.2d 51, 56, 421 N.Y.S.2d 556, 559, 396 N.E.2d 1029, 1032 (1979), . . . .

*Hunt Ltd.*, 889 F.2d at 1277 (additional citations omitted).

Another court recently addressed the question of whether, pursuant to a license agreement, a plaintiff had the right to prosecute an action for infringement. *Pfizer, Inc. v. Elan Pharmaceutical Research Corp.*, 812 F.Supp. 1352 (D.Del.1993). In *Pfizer*, a licensee brought an action for patent infringement. Before deciding whether the plaintiff had standing as a matter of patent law, the court considered whether the plaintiff had met the clearly delineated conditions set out in the license agreement before bringing the infringement action in its own name. *Id.* at 1362. The *Pfizer* court found that there were a number of conditions, including: (1) a sale by a third party; (2) written notice to the licensor requesting that the licensor take action to abate the infringement; (3) six months time for the licensor to take action; and (4) if no action was taken, licensee had to request that licensor authorize the licensee's suit in licensee's own name. *Id.* at 1363–65. Because the court found that *Pfizer* had not shown that it met any of the conditions precedent under the license agreement, the court held, as a matter of law, that *Pfizer* had no standing to sue. *Id.* at 1370.

In this case, the license agreement between Albert Einstein and Archon clearly sets out the parties' rights with respect to infringement actions. Section 5.3 of the agreement makes clear that the "[l]icensor shall have the *sole right* to determine whether or not any action shall be taken on or against any such infringements." Section 5.3 of the Einstein/Archon Agreement (emphasis added) Furthermore, it sets out the following conditions before the licensee may have the right to initiate legal proceedings: (1) prompt written notification of the licensor of any uses which may constitute infringements; and (2) written consent by Albert Einstein.

Althin does not allege that it has met either of these conditions. Rather, it argues that Albert Einstein did not expressly include a provision in the Einstein/Archon Agreement which directly binds any exclusive sub-licensee, including Althin, to the provisions of that agreement. The court finds that the plaintiff's argument is without merit. A grantor may not convey greater rights than its own. *Gilliam v. American Broadcasting Companies, Inc.*, 538 F.2d 14, 21 (2d Cir.1976); *see also Roy Export Co. Establishment of Vaduz, Liechtenstein, Black Inc., A.G. v. Columbia Broadcasting System, Inc.*, 503 F.Supp. 1137, 1153 (S.D.N.Y.1980), *aff'd*, 672 F.2d 1095 (2d Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). *See also Major League Baseball Promotion Corp. v. Colour–Tex Inc.*, 729 F.Supp. 1035, 1042 (D.N.J.1990) (where licensee failed to comply with provision in licensing agreement that required licensee to gain approval before

sublicensing, the sub-license was invalid because without compliance, the sub-license was outside of the scope of authority granted by the license agreement). Thus, Archon can give to Althin no more than Archon itself was granted by Albert Einstein. Consequently, any sub-licensee (in this case, Althin) is subject to the same conditions as the licensee before it can bring its own infringement action. Because Althin has not met these conditions, it lacks standing to bring its two infringement claims.

■ Althin makes one other argument to salvage its state law claim, misappropriation of trade secrets. Althin maintains that in Section 5.3 of the Einstein/Archon Agreement, the licensor retained the sole rights to only *infringement* actions. Althin argues that because trade secret misappropriation is not an infringement action, Althin need not meet the Section 5.3 conditions to bring that claim. Again, the court finds Althin's argument to be unavailing. The courts have continually used the term "infringement" when referring to the misappropriation of trade secrets. *See, e.g., Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 811, 108 S.Ct. 2166, 2175, 100 L.Ed.2d 811 (1988) ("trade secret infringement"); *Julie Research Laboratories, Inc. v. Select Photographic Engineering, Inc.,* 998 F.2d 65, 66 (2d Cir.1993) ("infringing proprietary trade secrets"); *Fiberlok, Inc. v. LMS Enterprises, Inc.,* 976 F.2d 958, 962 (5th Cir.1992) ("counter-claimed for trade secret infringement"); *American Can Company v. Mansukhani,* 742 F.2d 314, 334 (7th Cir.1984) ("infringing plaintiff's genuine trade secrets"). In addition, the plaintiff itself has referred to a claim for misappropriation of trade secrets as an "infringement" action. In Paragraph 6.4(A) of the Archon/Althin Agreement, the parties stated: "Distributors and licensees will not take, permit or authorize any action that *infringes* any patent, *copyright, trade secret,* trademark, trade name, or other proprietary right ..." Paragraph 6.4(A) of the Archon/Althin Agreement (emphasis added). As one can see, the parties contemplated that the licensor would retain the sole right to initiate all infringement actions, including the state law claim for trade secret misappropriation.

Accordingly, this court holds as a matter of law that Althin has not shown that it has standing to bring either of its infringement actions. The defendants' motion to dismiss pursuant to Rule 12(b)(1) is granted.

**B. Standing as a Matter of Copyright Law**

■ Defendants argue alternatively that Althin lacks standing under the Copyright Act since it has not alleged facts that would demonstrate that it is an exclusive licensee of the Hyperchart software. Defendants argue that Althin is a mere licensee with no standing to sue. Meanwhile, Althin argues that it has exclusive rights as a result of the sublicense agreement with Archon.

■ Standing to sue under the Copyright Act of 1976 is governed by 17 U.S.C. § 501(b). Section 501(b) provides that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it." Once the copyright owner grants an exclusive license of particular rights, only the exclusive licensee and not the original owner can sue for later infringements of such rights. *Essex Music, Inc. v. ABKCO Music and Records, Inc.,* 743 F.Supp. 237, 242 (S.D.N.Y.1990) (*quoting* 3 M. NIMMER AND D. NIMMER, NIMMER ON COPYRIGHT, § 12.02, p. 12–29, n. 13 (1990)). 1 P. GOLDSTEIN, COPYRIGHT: PRINCIPLES, LAW AND PRACTICE § 13.5, p. 412 (1989). At the same time, however, if the owner, assignee or exclusive licensee grants only a nonexclusive license, the recipient has no standing to sue for copyright infringement. *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.,* 526 F.Supp. 1187, 1190 (S.D.N.Y.1981), *aff'd in part, rev'd in part on other grounds,* 697 F.2d 27 (2d Cir.1982); NIMMER, *supra,* at § 12.02[B]; GOLDSTEIN, *supra,* at § 13.5.1.1.

In this case, plaintiff does not claim to be the owner of the copyright. Instead, Althin asserts that it is an exclusive licensee as a result of its agreement with Archon to become a sub-licensee. Defendants' meanwhile, argue that Althin is a nonexclusive licensee. Thus, the court is faced with the

question of whether, as a result of the Einstein/Archon and Archon/Althin Agreements, Althin was given an exclusive license.

Whether an agreement transfers rights that are exclusive or nonexclusive is governed by the substance of what was given to the licensee and not the label that the parties put on the agreement. Thus, it is not enough for Althin to simply say that it has been granted an exclusive sub-license without considering the substance of the rights granted and retained. In this case, Albert Einstein, the licensor, retained the sole right to determine whether or not any infringement actions would be brought. Section 5.3 of Einstein/Archon Agreement. Also, the licensor gave the licensee no right to transfer or assign the license agreement with only a very narrow exception. Section 10.4 of the Einstein/Archon Agreement.[1] In fact, any agreement that transferred or assigned the license agreement would have been invalid, regardless of its terms, unless the parties met the clearly delineated exception set out in Section 10.4. *See Major League Baseball Promotion Corp.*, 729 F.Supp. at 1042. Given the licensor's retention of these substantial rights, this court finds that Archon, the licensee, was not an exclusive licensee and, thus, had no standing to sue. Because a grantor may not convey greater rights than its owns, *Gilliam*, 538 F.2d at 21; *see also Roy Export*, 503 F.Supp. at 1153, it follows that Althin, a sub-licensee through Archon, could not have standing to sue either.

Accordingly, this court holds as a matter of copyright law that Althin does not have standing to bring the copyright infringement claim. The defendants' motion to dismiss this claim pursuant to FED.R.CIV.P. 12(b)(1) is granted.

### CONCLUSION

For the reasons stated herein, the defendants' motion to dismiss Althin's claims for copyright infringement and misappropriation of trade secrets, pursuant to FED.R.CIV.P. 12(b)(1), is granted. This case is dismissed with prejudice.

---

1. Section 10.4 states
   "Without the prior written approval of the other party, neither party may assign this

### MEMORANDUM OPINION AND ORDER ON MOTION TO ALTER OR AMEND

On November 23, 1994, this court dismissed Althin CD Medical Inc.'s ("Althin") amended complaint with prejudice under FED.R.CIV.P. 12(b)(1) because Althin lacked standing to sue. Althin now moves to alter or amend the judgment on the basis that the case should have been dismissed without prejudice.

A dismissal "with prejudice" means a dismissal that precludes the plaintiff from bringing a new suit on his claim. *Disher v. Information Resources, Inc.*, 873 F.2d 136, 139 (7th Cir.1989). Consequently, the plaintiff now brings the present motion for fear that the court's judgment has *res judicata* consequences and thus serves as an absolute bar to a subsequent action between the two parties. *See, e.g., Federal Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981).

■ A valid final judgment on the merits is *res judicata* and is an absolute bar to any later action between the same parties on the same cause of action. *Moitie*, 452 U.S. at 398, 101 S.Ct. at 2427. Furthermore, the law is clear that a dismissal for lack of subject matter jurisdiction is not a dismissal on the merits. *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1277 (7th Cir.1983). Therefore, a judgment dismissing a suit for lack of jurisdiction does not preclude a party from litigating the same cause of action in a court of competent jurisdiction. *Magnus Electronics, Inc. v. La Republica Argentina*, 830 F.2d 1396, 1400 (7th Cir. 1987); *Bunker Ramo*, 713 F.2d at 1277. However, it does preclude relitigation of whether the first tribunal had jurisdiction. *Magnus Electronics*, 830 F.2d at 1400; *Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939, 943 (7th Cir.1981); *see also* 18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE & PROCEDURE § 4402, at 11 (1994 Supp.). In this case, Althin's amended complaint was dismissed pursuant to FED.

---

Agreement except that Licensee may assign this Agreement to a corporation in which Dean Kyriakos is the majority shareholder."

R.Civ.P. 12(b)(1) because the court lacked subject matter jurisdiction. Accordingly, the court's judgment will not have full *res judicata* effect but will preclude relitigation of the jurisdiction question. In light of that, the court amends the court's order of November 23, 1994, and holds that the case should have been dismissed without prejudice.